E-FILED
Monday, 10 July, 2017  08:33:38 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| SEAN YOUNGBLOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-01313 |
| | ) | |
| PIONEER AUTO SALES | ) | |
| DETAILING, INC., | ) | |
| & MARTY GOLDSTEIN | ) | |
| (individually and as owner) | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 7.1(D) and Rule 56 of the Federal Rules of Civil Procedure, Defendants, by their undersigned attorneys, respectfully move for summary judgment on Plaintiff's First Amended Complaint, as follows:

### I. INTRODUCTION

This case runs afoul of the Illinois "one re-filing rule," which permits only one re-filing of a case within one year following a voluntary dismissal. Here, on September 21, 2015, the first suit was filed in Peoria County Case No. 15-L-189 by Plaintiff's now-ex-wife, Kira Youngblood, who voluntarily dismissed that suit on November 17, 2015. It is Defendants' position that the filing in 15-L-189 should be counted against both Sean and Kira even though nominally it was filed by Kira. On September 30, 2016, the second suit was filed by Sean Youngblood in Peoria County Case No. 16-L-207; that case was dismissed voluntarily by Sean Youngblood on October 11, 2016. On September 19, 2017, the third case was filed by Sean Youngblood in McLean County Case No. 2017-L-07. Under the Illinois "one re-filing rule," the filing in McLean County (which Defendants have removed to federal court) should be found to be an impermissible second re-filing.

1

Assuming arguendo that the first suit in Peoria County (15-L-189) is not counted as a first filing by Sean Youngblood, due to the fact that such lawsuit was filed and voluntarily dismissed by Kira Youngblood, then Defendants concede that the filing of the lawsuit in McLean County (2017-L-07) would be only a first re-filing by Sean which would not be impermissible per se under the Illinois one re-filing rule. However, in that event, the first suit filed by Kira Youngblood in 15-L-189 should not be viewed as a lawsuit which tolls the statute of limitations for Sean Youngblood. The statute of limitations for Sean Youngblood's claims would thus be measured in relation to September 30, 2016, which is when Sean filed his suit in Peoria County Case No. 16-L-207; they would not be measured in relation to September 21, 2015, which is when Kira filed her case in 15-L-189.

Here, it cannot be disputed that Kira Youngblood and Sean Youngblood last transferred money ($500,000.00) to Defendants on October 6, 2010, as a loan. Rather quickly, it became evident that re-payment and other performance by Defendants would be sporadic, at best. Here, Sean Youngblood's First Amended Complaint alleges that many monthly payments were missed during 2011 and 2012, that Defendants never acquired a key-man insurance policy as required under the parties' agreement in October 2010, and that Defendants never furnished Sean Youngblood with car titles, as the agreements required. Accordingly, the passage of time after October 5, 2010 (the date the money was allegedly transferred to Defendants), and before September 30, 2016, caused the four-year statute of limitations to run on Sean Youngblood's RICO claim in Count I as early as October 5, 2014. Similarly, as of September 30, 2016, the five-year statute of limitations had run (on October 5, 2015) on the "money had and received" claim in Count III. Further, as of September 30, 2016, the five-year statute of limitations had run (on October 5, 2015) on the common law fraud claim in Count IV. Finally, as of September 30, 2016, the two-

year limitations period had long since run on the intentional-infliction-of-emotional distress claims in Count V.

Even if summary judgment is not entered on all claims under the one re-filing rule, and even if summary judgment is not entered on Counts I, III, IV, and/or V on limitations grounds, summary judgment should be entered on several other grounds.

First, in paragraph 32 of the First Amended Complaint, Plaintiff references transfer of $500,000.00 in cash, in interstate transactions from Wisconsin to Illinois; in paragraph 33, Plaintiff refers to the "interstate money transfer [that] occurred on October 8, 2010. Theses wire transfers consisted of $360,000.00 from Kira Youngblood and $140,000.00 from Sean Youngblood. Even assuming only for the sake of argument that these two wire transfers constituted two acts of "wire fraud", they are insufficient to form a "pattern" under RICO. Thus, summary judgment should be entered on Count I (RICO).

Second, summary judgment should be entered on Count I (RICO) because Sean Youngblood has not been injured in his business or property. As of October 8, 2010, Sean Youngblood transferred $140,000.00 and Kira Youngblood transferred $360,000.00. Sean Youngblood has been repaid more than then $140,000.00 he transferred, thus the transfer of $140,000.00 cannot be viewed as an injury at present, even if the funds intially could be viewed as his "business or property." Sean Youngblood also claims damages because he has suffered emotional distress, but that is not "business or property" for RICO purposes. In an attempt nevertheless to meet the "business or property" element under RICO, Sean Youngblood claims ownership of a business known as "Bloomington Normal Towing," which is a lie because, as we shall show, Bloomington Normal Towing was owned by Kira LLC and Kira Mann Youngblood, not by Sean Youngblood. Finally, the "business or property" element is not satisfied by Sean Youngblood's sale of his own belongings or vehicles, or by

his borrowing money, or by his credit record, or by his "two long term relationships" going awry.

Third, summary judgment should be granted on Count II (Breach of Contract), on the ground that on October 11, 2016, as shown in Exhibit 16, there was an "executory accord" and a "compromise and settlement" which superseded all prior agreements. To the extent Count II seeks a recovery on any agreements preceding October 11, 2016, summary judgment should be entered finding that any such agreements have been superseded.

Finally, to the extent Count I, IV or V seek an award of damages on behalf of Sean for Kira's damages, summary judgment should be entered on such Counts, because Kira never assigned any such claims to Sean.

## II. UNDISPUTED MATERIAL FACTS

1. On October 5, 2010, Marty Goldstein received $360,000 from Kira Mann. The "Wire Transfer Request Confirmation" associated therewith is attached as Exhibit 1.

2. On October 5, 2010, Marty Goldstein received $140,000 from Sean Youngblood. The "Wire Transfer Request Confirmation" associated therewith is attached as Exhibit 2.

3. At some point (unknown to Marty Goldstein) Kira Mann and Sean Youngblood married each other.

4. The wire transfers shown in Exhibits 1 and 2 reflect the only time Marty Goldstein or Pioneer received any transfer of money or property from Kira Mann Youngblood or Sean Youngblood.

5. At about the time the above-referenced wire transfers were made, on or about October 5, 2010, Marty Goldstein signed, Sean Youngblood signed, and Kira Mann signed, the "PROMISSORY NOTE" attached hereto as Exhibit 3. Said "Promissory Note" was in the amount of $500,000.00 and described Sean Youngblood and Kira Mann as "lenders." The amount of $500,000.00 reflected the combine total of $360,000.00 that Marty Goldstein

received from Kira Mann and the $140,000.00 that Marty Goldstein received from Sean Youngblood. The combined total of $500,000.00 reflect the only transfer of money or property Marty Goldstein received from Kira Mann Youngblood or Sean Youngblood.

6. On or about December 23, 2010, Marty Goldstein signed, Sean Youngblood signed, and Kira Mann signed, Exhibit 4 hereto, which was entitled an "Absolute Person Guarantee of Payment of Promissory Note Dates October 5, 2010. Exhibit 4 referenced Exhibit 3, by description. Exhibit 4 described Sean Youngblood and Kira Mann as "Lenders."

7. By May 22, 2013, Marty Goldstein had paid down the balance on Exhibit 1 to $346,000.00, at which time Marty Goldstein signed, Sean Youngblood signed, and "Kira (Mann) Youngblood" signed, the "Installment Promissory Note" attached hereto as Exhibit 5. Exhibit 5 was in the amount of $346,000.00. Exhibit 5 described Sean Youngblood and Kira (Mann) Youngblood as "the Lenders." Exhibit 5 refers to the Youngbloods' address as located in Bloomington, Illinois.

8. By September 21, 2015, Marty Goldstein had paid more than the $140,000.00 that had been sent by Sean Youngblood, to Marty Goldstein, back in October 2010.

9. On or about September 21, 2015, Kira Mann Youngblood sued Marty Goldstein and Pioneer Auto Sales & Detailing, Inc. in the Circuit Court for the Tenth Judicial Circuit, Peoria, Illinois, in Case No. 15-L-189. A copy of the Complaint is attached hereto as Exhibit 6. Initially, Sean Youngblood was not a plaintiff therein. On September 24, 2015, Pioneer and Marty Goldstein filed the "Entry of Appearance and Jury Demand attached hereto as Exhibit 7. On September 28, 2015, Pioneer and Marty Goldstein filed the "Motion To Dismiss" attached hereto as Exhibit 8, contending that Sean Youngblood was a necessary plaintiff.

10. By October 2, 2015, Marty Goldstein had paid down the balance to $267,307.00. On or about October 2, 2015, Sean Youngblood and Kira Youngblood signed the "Promissory Note" attached hereto as Exhibit 9. On or about October 8, 2015, Marty Goldstein signed Exhibit 9. Exhibit I describes the Lender "collectively and individually as Kira Youngblood of Morton, Illinois and Sean Youngblood of Bloomington, Illinois.

11. On November 17, 2015, in the aforesaid Peoria County Case No. 15-L-189, Kira Youngblood filed a motion to dismiss her case, without prejudice. The Court entered the Order Dismissing Case Without Prejudice attached hereto as Exhibit 10.

12. On or about September 22, 2016, in Peoria County Case No. 15-L-189, Sean Youngblood filed the "Motion to Refile and Motion for Leave of Court To Filed First Amended Complaint" attached hereto as Exhibit 11. In Peoria County Case No. 15-L-189, on or about September 26, 2016, Pioneer and Marty Goldstein filed the "Defendants' Motion to Bar Refiling of Complaint by Sean Youngblood, attached hereto as Exhibit 12. Exhibit 12 attached a "Declaration of Kira M. Youngblood" in which Kira Youngblood stated that her signature (on what is attached hereto as Exhibit 11 was a forgery. Attached hereto as Exhibit 13 is the "Additional Memorandum in Support of Defendant's Motion to Bar Refiling of Complaint by Sean Youngblood" filed on October 5, 2016 in Peoria County Case No. 15-L-189.

13. On September 30, 2016, in the Circuit Court for the Tenth Judicial Circuit, Peoria County, Illinois, Sean Youngblood what he called the "First Complaint" in Case No. 16-L-207, that is attached hereto as Exhibit 14.

14. Attached hereto as Exhibit 15 is the docket record in Peoria County Case No. 15-L-189. A hearing was set on October 11, 2016, as shown on the docket record, on Goldstein's/Pioneer's motion to bar the refiling.

15. Attached hereto as Exhibit 16 is an agreement Marty Goldstein negotiated with Sean Youngblood on October 11, 2016, at the law offices of Cusack, Gilfillan & O'Day. Marty Goldstein signed said agreement that day, personally and on behalf of Pioneer. Sean Youngblood signed said agreement in my presence, at said offices, on said date. Kira Youngblood, who was not present, signed said agreement on a later date.

16. At the same meeting on October 11, 2016 where he signed Exhibit 16, Sean Youngblood also signed in Marty Goldstein's presence the "Notice of Voluntary Dismissal and Order Approving Same" that is attached hereto as Exhibit 17, for Peoria County Case No. 16-L-207. On the same date the order was signed by the Court approving Sean Youngblood's dismissal of the cause "without prejudice" as to Marty Goldstein and Pioneer and with prejudice as to his brother, Jay Goldstein. Said Order is part of Exhibit 17. Attached herein as Exhibit 18 is the docket record in Peoria County Case No. 16-L-207, reflecting entry of said Order on October 11, 2016.

17. At the same meeting on October 11, 2016 where he signed Exhibit 16 and Exhibit 16, in Marty Goldstein's presence Sean Youngblood also signed Exhibit 19 hereto, in Peoria County Case No. 15-L-189, in which the movants withdraw "all pending motion, responses, prayers, and pleadings." Pioneer and Marty Goldstein also signed Exhibit 19 at said meeting.

18. Attached as part of Exhibit 19 is an Order dated October 11, 2016, signed by the Honorable Jodi M. Hoos, vacating the October 11 hearing date became all matter were moot. Judy Hoos entered a dismissal "with prejudice" as to Marty's brother, Jay Goldstein. On the docket sheet attached hereto as Exhibit 15, the entry of said Order is reflected.

19. On January 6, 2017, in Peoria County Case No 16-L-207, Sean Youngblood filed the "Motion For Leave of Court To Re-Instate First Amended Complaint" that is attached hereto as Exhibit 20. Sean Youngblood sent to Marty Goldstein's attorneys the notice

attached hereto as Exhibit 21, setting Exhibit 20 for hearing on January 11, 2016. Judge Hoos changed the hearing date to January 20, 2016 and Sean Youngblood sent to Marty Goldstein's attorneys the notice of hearing attached hereto as Exhibit 22. On January 20, 2017, when Marty Goldstein got to Court, Sean Youngblood stated he was withdrawing all pending motions. Judge Hoos entered the Order dated January 20, 2017, that is attached hereto as Exhibit 23. Exhibit 23 reflects Sean Youngblood's withdrawing of all pending motions; this Order stated that the "10-11-16 order remains in effect," which was a reference to the Order included in Exhibit 17 hereto.

20. The day before Sean Youngblood withdrew his pending motion in Peoria County Case No. 16-L-207, Sean Youngblood filed a Complaint in the Circuit Court of the Eleventh Judicial Circuit, McLean County, Illinois, in Case No. 17-L-07. A copy of said Complaint is attached hereto as Exhibit 24. The Complaint named Marty Goldstein, Pioneer, and his brother, Jay Goldstein, as defendants.

21. Attached hereto as Exhibit 25 is the docket record in McLean County Case No. 17-L-07.

22. In Exhibit 17, Sean Youngblood dismissed the claims against Jay Goldstein, with prejudice, in Peoria County Case No. 16-L-207. In Exhibit 26, Sean Youngblood (as in Peoria County Case No. 16-L-207) dismissed McLean County Case No. 17-L-07 against Marty's brother, Jay Goldstein, "without prejudice," on June 5, 2017.

23. As shown on the docket entry on Exhibit 25, for the date of April 28, 2017, Sean Youngblood was given five (5) days to file an Amended Complaint. As shown in Exhibit 27, Sean Youngblood filed a document entitled "First Amended Complaint" on May 10, 2017, which was more than the five-day period he had been allowed by the Court on April 28, 2017. Subsequently, on June, 5, 2017, Sean Youngblood made an oral motion to file his "First Amended Complaint" past the five-day deadline he had been given on April 28, 2017,

as shown on the 6/5/2017 entry on Exhibit 25. The Court in McLean County granted Sean Youngblood's motion to file his First Amended Complaint, as shown on the 6/25/17 entry on Exhibit 25.

24.  On July 3, 2017, Defendants removed the McLean County case to Federal Court.

25. Exhibit 28 is an "Assignment of Funds & Release of Ownership" dated March 26, 2012.

26. Exhibit 28 was signed by Kira Youngblood on or about March 26, 2012. This instrument referenced the "$500,000 Promissory Note/Loan" that is owed to both Sean Youngblood and [Kira Youngblood]. As of March 26, 2012, Exhibits 3 and 4 had been signed. Exhibits 5, 9, and 16 had not yet been signed.

27. In paragraph 25 of the First Amended Complaint, herein, Sean Youngblood refers to "Bloomington Normal Towing" which he claims to have started, financed, and controlled. In paragraph 39, Sean Youngblood contends he had just begun opening and operating a towing company and that he counted on repayment of the loan for the business to survive. In paragraph 41, Sean Youngblood refers to losing his business. In paragraph 44, Sean Youngblood refers to operating "his business" called "Bloomington Normal Towing"; in paragraph 45, it is alleged that this business shut down due to lack of funds. In paragraph 53, Sean Youngblood claims damages based on an alleged injury to said business.

28. In fact, Sean Youngblood did not own Bloomington Normal Towing. An entity created as Kira LLC owned Bloomington Normal Towing. This LLC has as its member-manager one named person: Kira Mann Youngblood. Attached hereto as Exhibit 29 is the Secretary of State's information concerning Kira LLC.

29. Attached as Exhibit 30 is the opinion of the U.S. Bankruptcy Judge Mary P. Gorman, dated October 10, 2013. As set forth in Judge Gorman's opinion, Kira Youngblood

netted $1.2 million from a personal injury settlement she received in 2010. Kira formed a limited liability complain, Kira LLC, and, at least on paper, Kira retained full ownership and control of the company. Per Judge Gorman's ruling, Kira LLC operated a towing business under the registered name of Bloomington Normal Towing and Recovery ("BN Towing").

30. In state court, Kira Youngblood and Kira LLC sued the former employer of Sean Youngblood; that business was "Joe's Towing". At the end of the case, sanctions of $13,237 were entered against Kira Youngblood and Kira LLC. Per Judge Gorman's opinion, in March 2013, Joe's Towing filed supplementary proceedings against Kira and Kira LLC.

31. On March 26, 2012, the execution of Exhibit 28, in which Kira purported to assign to Sean her rights in the debt owed by Defendants herein, was to avoid having such rights be subjected to confiscation in the supplementary proceedings.

32. The "reasons" set forth in Exhibit 28, for transferring Kira's share of the debt owed by Defendants, were shown.

33. After Exhibit 28 was signed, Sean Youngblood continued to treat Kira Youngblood as having an interest in the debt owed by Defendants. Subsequently, Exhibits 5, 9, and 16, Kira was viewed by Sean as having an interest in the debt. In Exhibit 6, Kira sued on the debt in her own behalf on September 21, 2015. In Exhibit 11, on September 22, 2016, Sean attempted to join in Kira's voluntarily-dismissed lawsuit in Peoria County Case No. 15-L-189.

34. Per Exhibit 30. The Bankruptcy Trustee alleged that Kira had "dissolved Kira LLC and transferred the business assets without consideration" shortly before Kira filed her bankruptcy. As set forth on page 5 of Judge Gorman's opinion, Kira admitted that Kira LLC "had been dissolved and that she has transferred the assets to former employees." As set forth on pages 5-6 of the opinion, Kira stipulated that the assets of Kira LLC has been

transferred to third parties for no consideration and Kira agreed that " the towing business has been dissolved because to Town of Normal revoked her business license." The business license was "revoked due to criminal charges filed against her husband." Kira used some of her remaining personal-injury settlement funds to post a $200,025 bond to have Sean released from jail.

35. Attached as Exhibit 31 is the record showing Sean's felony convictions in McLean County Case No. 2012-CF-219. Included is the record of his $2 million bond which required $200,000 to be posted as 10% thereof.

36. In paragraph 41 of the First Amended Complaint, Sean Youngblood alleges that he lost "his business" from not being paid by Defendants. In fact, the business was Kira's, not his. She lost the business because the Town of Normal revoked the business license of Kira LLC after Sean was charged with numerous vehicle-related felonies, for some of which he was found guilty.

### III. ARGUMENT.

1.      Effect of Kira's Assignment to Sean. Exhibit 28 is an "Assignment of Funds & Release of Ownership" dated March 26, 2012. Sean did not attach Exhibit 28 to the First Amended Complaint. This document preceded other instruments on which Kira's name appears as having an interest. Under Illinois law, a wife's property belongs to her, not to her husband. 750 ILCS 65/6, 7 & 9. Obviously, Exhibit 28 did not assign away everything.

2.      The assignee and owner of a non-negotiable chose in action may sue thereon in his or her own name. 735 ILCS 5/2-403(a). An assignment need not transfer to the assignee all claims and portions thereof held by the assignor. A valid assignment need only assign or transfer the whole or a part of some particular thing, debt, or chose in action and it must describe the subject matter of the assignment with sufficient particularity to render it capable of identification. *Hogan v. Dalziel*, 40 Ill. App. 2d 19, 29, 188 N.E. 2d 367, 372 (2d

Dist. 1963); <u>see also</u> *Klehm v. Grecian Chalet, Ltd.*, 164 Ill. App. 3d 610, 616, 518 N.E. 2d 187, 191 (1st Dist. 1987). In her Assignment to Sean Youngblood, Kira Mann Youngblood transferred her right to receive income under a $500,000 Promissory Note/Loan that at the time was owed to both Sean and Kira. There is no basis in Exhibit 28 to find any assignment of any other causes of action by Kira. Specifically, Kira did not transfer or assign to Sean any causes of action which she may have had against Defendants for a RICO violation, for common law fraud, or for intentional infliction of emotional distress. This means that Sean Youngblood should not be permitted to use injury to Kira's "business or property" as a basis for proceeding under RICO. <u>See</u> 18 U.S.C. § 1964(c). Likewise, even if the Assignment is deemed to encompass Kira's claims for breach of contract (Count II) or money had and received (Count III), the Assignment is not broad enough to cover any claims Kira might have for fraud in the inducement (Count IV, as to the $360,000.00 transferred by Kira) or for intentional infliction of emotional distress (Count V, seeking recovery for distress cause by financial problems of Kira's business and distress caused by non-payment of funds furnished by Kira).

3.     <u>The Settlement on October 11, 2016</u>. On October 11, 2016, Exhibit 16 was executed by Sean Youngblood, Marty Goldstein, and Pioneer. Kira Youngblood executed it later. On October 11, 2016, besides executing Exhibit 16, the parties executed all documents needed to end all pending matters in the two Peoria County cases: Exhibit 19, to conclude pending matters in Peoria County Case No. 15-L-189, and Exhibit 17, to conclude Peoria County Case No 16-L-207.

4.     The Court should enter summary judgment on Count III (money had and received) on the strength of Exhibit 16, because it reflects an "executory accord" and a "compromise and settlement" under Illinois law. For the same reason, the Court should also enter partial summary judgment on Count II, pursuant to the first sentence of Rule 56(a) of

the federal Rules of Civil Procedure, on all alleged written agreements relied on in Count II, except for any part that relies on Exhibit 16.

5.    As explained in *Collection Professionals, Inc. v. Logan*, 296 Ill. App. 3d 959, 964, 695 N.E. 2d 1344, 1348 (3d Dist. 1998), an "executory accord" is an agreement "to accept at some future time a stipulated performance as satisfaction of an obligation." The requirements of an enforceable "executory accord" are (1) the creditor has clearly accepted a new promise of future performance, itself, and (2) the new promise must be based on new consideration.

6.    "Compromise and settlement" is an agreement to terminate, by means of mutual concessions, a claim which is disputed or unliquidated; it involves "an agreement that a substituted performance is acceptable instead of what was previously claimed to be due." 296 Ill. App. 3d at 964-65.

7.    For purposes of this summary judgment motion, Defendants do not claim that Exhibit 16 resolves the claims in Counts I, IV, or V. However, with emphasis on Counts II and III, Exhibit 16 states that it amends, replaces, and supersedes any prior agreement between the parties, with the exceptions of agreed court orders and the Assignment of Funds & Release of Ownership dated March 26, 2016." Several agreed court orders were entered on October 11, 2016. Exhibit 28 was between Kira Youngblood and Sean Youngblood and was labeled as an "Assignment of Funds & Release of Ownership," but it was dated on March 26, 2012, not on March 26, 2016.

8.    The language in Exhibit 16, that it "supersedes" any prior agreement, is unambiguous and should be enforced. In *Air Line Pilots Ass'n, Int'l v. Midwest Express Airlines, Inc,*, 279 F. 3d 553 (7th Cir. 2002), a pilots union had been selected as the representative for a bargaining unit but the union had not yet reached its first collective bargaining agreement ("CBA") with the employer, Midwest Express. Moffatt, a pilot, failed

a proficiency test. In place of being fired, Moffatt reached a last-chance settlement agreement, that Midwest Express, Moffatt, and the union signed. Several months later, Midwest Express and the pilots union reached their first-ever CBA. The CBA provided that is "shall <u>supersede</u> and take precedence over all agreements... executed between [Midwest] and [pilots union] prior to the signing of this Agreement." [Emphasis added.] Subsequently, Moffatt failed a proficiency check and the employer fired him, ostensibly under the last-chance settlement agreement, without following the steps set forth in the new CBA. The Seventh Circuit found that the CBA "could not be clearer, that the agreement supersedes all previous agreements" between Midwest Express and the union. 279 F. 3d at 557.

9.      Here, the Court should enter summary judgment on Counts II (breach of contract) and III (money had a received) on the ground that any prior agreements between the parties are superseded by Exhibit 16.

10.      <u>One Re-Filing Rule and Res Judicata.</u> Illinois has a "one re-filing rule". Under the "one re-filing rule," if a prior-filed case is dismissed (other than with prejudice), there is a one-time opportunity to file a new case up to one year following the dismissal of the prior-filed case. A second bite at the apple is allowed, but a third bite at the apple is not allowed. Here, as the second re-filing, the instant case violates the one re-filing rule.

11.      In *Carr v. Tillery*, 591 F. 3d 909 (7th Cir. 2010), the plaintiff filed claims of fraud in state-court lawsuit, followed by a lawsuit in federal court adding a RICO count. The plaintiff contended that his federal lawsuit should be viewed as his first re-filing, because the fact that suits were pending in state court at the same time could not be viewed as a "re-filing" because none were "new" in relation to each other. 591 F. 3d at 914-15. The court of appeals found that where (as in the instant case, where case no. 15-L-189 and case no. 16-L-207 were on file at the same time) cases are pending at the same time, the case filed later would be viewed as the first re-filing. Thus, in the instant case, case no. 15-L-189

14

would be viewed as the first filing, even though activities were occurring in both cases at the same time, before Exhibit 16 was executed on October 11, 2016; that is, provided that case no. 15-L-189 counts against Sean Youngblood. Then, the instant case (as a Second Re-Filing) is barred by res judicata, because it is an attempt at a third bite at the apple. Second, when the instant case was filed in McLean County on January 19, 2017, that exceeded the one year period allowed under the One Re-Filing Rule, because the filing of the instant case occurred more than one year after the dismissal of the First-Suit on November 17, 2015.

12.     The so-called "One Re-Filing Rule" under Illinois law arises under Section 13-217 of the Illinois Code of Civil Procedure. Care must be taken to use the version of Section 13-217 that was in place before the section was purportedly amended by Public Act 89-7; that public act was held unconstitutional, as explained by the Illinois Supreme Court in *Hudson v. City of Chicago*, 228 Ill. 2d 462, 469 n.1, 889 N.E. 2d 210, 214 n.1 (2008). Section 13-217 provides in pertinent part:

> "Reversal or dismissal. In the actions specified in Article XIII of this Act or any other act or contract where the time for commencing an action is limited, * * *, or the action is voluntarily dismissed by the plaintiff, or the action is dismissed for want of prosecution, * * *, then whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff, his or her heirs, executors or administrators may commence a new action within one year or within the remaining period of limitation, whichever is greater, * * *, or after the action is voluntarily dismissed by the plaintiff, or the action is dismiss for want of prosecution, * * *."

13.     A transactional test is used to determine identity of causes of action. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 309-10, 703 N.E. 2d 883, 892-93 (1998);

14.     An identity of parties is not required. It suffices that parties in successive actions are privies. *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 50.

15.     There have been district court decisions discussing when the One Re-Filing Rule might be applied in a case based on federal question jurisdiction rather than a

diversity jurisdiction. Compare *Gholson v. Lewis*, 2008 WL 821875 (N.D. Ill. 2008) <u>with</u> *Beck v. Caterpillar*, 855 F. Supp. 260, 264-65 (C.D. Ill. 1994). However, in *Carr v. Tillery*, 591 F. 3d 909,913-14 (7th Cir. 2010), the Seventh Circuit applied the One Re-Filing Rule to bar a RICO claim that was filed in a subsequent proceeding in federal court. Accordingly, the One Re-Filing Rule may be applied to all counts in Plaintiff's First Amended Complaint, including Count I (RICO).

16. Plainly, identical parties are not required. *City of Rockford v. Unit Six*, 362 Ill. App. 3d 556, 563-65, 840 N.E. 2d 1283, 1289-1291 (2d Dist. 2005). Nonetheless, Sean Youngblood might attempt to argue that Peoria County Case No. 15-L-189 ought not be counted as a "First-Suit" filed by him, because 15-L-189 was filed and voluntarily dismissed by Kira, not by him. However, Sean Youngblood filed pleadings in 15-L-189 when, on September 22, 2016 Sean Youngblood filed his "Motion to Refile…" in 15-L-189. He participated in each lawsuit that has been filed. It would be proper to attribute 15-L-189 to <u>both</u> Kira and Sean. They were in privity on all instruments. *Ross Advertising v. Heartland Bank and Trust Co.*, 2012 IL App. (3d) 110200 ¶¶ 28-35.

17. Accordingly, under the one re-filing rule, summary judgment should be entered on all counts.

18. <u>Statute of Limitations on Count I (RICO)</u>. Summary judgment should be entered on Count I of the Complaint because the filing date of Count I exceeded the statute of limitations for a civil RICO action, which is four years. Here, Plaintiff alleges that $500,000 was sent to Defendants on or about October 8, 2010. Defendants received $360,000.00 from Kira Mann Youngblood and $140,000 from Sean Youngblood on or about October 5-8, 2010. Thus, the statute of limitations for Count I expired on or about October 8, 2014, which was well before Sean Youngblood filed his non-RICO claims on September

30, 2016 and which was well before Youngblood filed the instant case was filed in McLean

County on January 19, 2017.

19.    In *Agency Holding Corp. v. Malley-Duff & Associates, Inc.* 483 U.S 143, 107

S. Ct. 2750 (1987), the Court held that civil RICO claims are subject to the four-year statute

of limitations applicable to Clayton Act civil enforcement actions. Although the criminal

statute of limitations begins to run from the most recent predicate act, that is not

appropriate in civil RICO actions. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 188, 117 S. Ct.

1984, 1990 (1997). In *Rotella v. Wood*, 528 U.S. 549, 555-56, 120 S. Ct. 1075, 1081 (2000),

the Court held that it is the discovery of the injury, not discovery of the other elements of a

claim, which starts the four-year clock applicable to a civil RICO action. The Court pointed

to the Clayton Act's injury-focused accrual rule as well established by the time civil RICO

was enacted. 528 U.S. at 57-58. Thus, generally, "a cause of action accrues and the statute

begins to run when a defendant commits an act that injures a plaintiff's business."

20.    In the instant case, Sean Youngblood asserts that a loan was made in the

amount of $500,000 on or about October 5-8, 2010. No other funds were even transferred by

Sean Youngblood to Defendants, albeit allegedly these funds were not repaid in full.

Exhibits 1 and 2 show when the wire transfers were made, on October 6, 2010. Exhibit 3,

executed on October 5, 2010, provided for payments starting on November 5, 2010 and

continuing on the 5th day of each month. If the transfer of these funds is viewed as the

injury to Sean Youngblood's business or property, then the four-year clock started to run

then and would have expired on or about October 6, 2014. That date was before Kira

Youngblood filed a lawsuit in Peoria County Case No. 15-L-189 on or about September 21,

2015. The date of October 6, 2014 was also well before Sean Youngblood filed his lawsuit in

Peoria County Case No. 16-L-207 on September 22, 2016.

21.     Per paragraphs 40 and 41 of Sean Youngblood's First Amended Complaint herein, by March 8, 2012, Sean Youngblood knew that payments had been missed and that "Marty & Pioneer refused to abide" by the terms of the Promissory Note dated October 5, 2010. Paragraph 31 of the First Amended Complaint alleges that the Defendants were obliged to procure a key man insurance policy and furnish Sean Youngblood with titles to vehicles; per paragraph 33 of the Frist Amended Complaint. Thus, per his complaint's own allegations, Sean Youngblood knew immediately after October 5, 2010 that defendants were occurring, with emphasis on the insurance policy and the car titles; and he knew earlier than March 8, 2012 that payments were missed. On March 26, 2012 even under same form of discovery rule, rather than looking to when the injury occurred, the four-year limitations period under RICO started to run immediately after October 6, 2010 or, at the latest, on or before March 8, 2012. Even if the date of March 8, 2012 is used, that is over four years before Sean Youngblood filed his complaint in Peoria County Case No. 16-L-207 on September 22, 2016.

22.     <u>Statute of Limitations on Count III (Money Had and Received).</u> Count III purports to be a claim for "money had and received." A five-year statute of limitations applies to such a claim. This statute begins to run at the time of the last payment of funds paid. *School Directors of Dist. No. 5 v. School Directors of Dist. No. 1*, 105 Ill. 653, 655-56 (1883); *Harbaugh v. City of Sullivan*, 206 Ill. App. 496, 498-99 (3d Dist. 1917). Here, the only money had and received was on or about October 5, 2010 when Defendants received a total of $500,000 from Kira Youngblood and Sean Youngblood. The five-year period had already expired when Plaintiff filed the instant case on January 17, 2017.

23.     <u>Statute of Limitations on Count IV.</u> Count IV is purportedly a claim for common law fraud, to which a five-year statute of limitations applies. 735 ILCS 5/13-205; *Gillespie Community Unit School Dist. No. 7, Macoupin County v. Wight & Co.*, 2014 IL

115330, 4 N.E. 3d 37. Plaintiff alleges that Defendants committed fraud on or about October 8, 2010 when Defendants received $500,000.00. Here, the statute of limitations had already run at the time of Plaintiff's filing of Count IV in McLean County on January 19, 2017. Accordingly, summary judgment should be granted on Count IV, on limitations grounds.

24.     Count V is purportedly a claim for intentional infliction of emotional distress ("IIED"). A two-year statute of limitation applies. That period had already expired when Plaintiff filed the instant case on January 19, 2017. *Dahl v. Federal Land Bank Assn. of Western Illinois*, 213 Ill. App. 3d 867, 872, 572 N.E. 2d 311, 314 (3d Dist. 1991). Here, the limitations period expired two years after the alleged wrongdoing of taking Sean Youngblood's money and not paying it back. Thus, summary judgment should be entered on Count V, because the statute of limitations ran on October 5-8, 2012.

25.     <u>Summary Judgment Should Be Entered on Count I (RICO)</u>. Count I is not based on any alleged violation of RICO that was the proximate cause of any alleged harm to an interest in <u>Sean's</u> business or property. <u>See</u> 18 U.S.C. § 1964(c); <u>see also</u> *Napleton's Arlington Heights Motors, Inc. v. FCA US LLC*, 214 F. Supp. 3d 675, 690-692 (N.D. Ill. 2016).

26.     In the first place, the facts show that $360,000.00 was transferred by Kira and only $140,000.00 was transferred by Sean. The $360,000.00 transferred by Kira was not Sean's "business or property". It is apparent that most of the funds were Kira Youngblood's "property" at the time of the alleged fraud in procuring the $500,000 loan in October 2010. Accordingly, Plaintiff lacks standing to sue under RICO except perhaps as to $140,000.00.

27.    This case cannot proceed under RICO because it involves a loan made in

October 2010 that has been repaid only in part. All else in the complaint is fallout allegedly

from that. As stated in *Carr v. Tillery,* 591 F. 3d 909, 918 (7th Cir. 2010):

> [The Rico allegations amount merely to a breach of contract claim, which cannot be
> transmogrified into a RICO claim by the facile device of charging that the breach
> was fraudulent, indeed criminal. RICO is not a proper vehicle for levering a breach
> of contract suit between citizens of the same state into federal court, and under a
> statute that entitles a successful plaintiff to treble damages and attorneys' fees.
> [citations omitted] *Midwest Grinding Co. v. Spitz*, 876 F. 3d 1016, 1025-26 (7th Cir.
> 1992) ("civil RICO plaintiffs persist in trying to fit a square peg in [to] a round hole
> by squeezing garden variety business disputes into civil RICO actions....RICO has
> not federalized every state common-law cause of action available to remedy business
> deals gone sour"); [citation omitted] For the most part the complaint simply renames
> breach of contract fraud or crime in an effort to satisfy the requirement of
> establishing "predicate acts" required for a RICO claim. The defendants did not pay
> Carr the fees to which he contends he was entitled by the Memorandum of
> Understanding: the complaint calls this extortion, financial exploitation of an elderly
> person, theft in interstate commerce, mail fraud, wire fraud, and so on almost ad
> infinitum. If such renaming satisfies civil RICO, we shall see a wholesale migration
> of breach of contract suits into the federal courts, given the procedural advantages of
> so proceeding that we noted earlier."

28.    Here, there was no racketeering activities (e.g. mailings or wires) that

constitute a pattern. See 18 U.S.C. § 1961(1); see also *In re Testosterone Replacement*

*Therapy Products Liability Litigation,* 159 F. Supp. 3d 898, 920-22 (N.D. Ill. 2016). Plaintiff

fails to allege when any "false documents were transmitted," and "who mailed or wired

them." *Drobny v. JP Morgan Chase Bank*, NA, 929 F. Supp. 2d 839, 849-50 (N.D. Ill. 2013).

Nor has the "pattern" requirement been satisfied so as to make a showing of "continuity

plus relationship;" here, at most, the alleged two wire transfers in October 2010 constitute a

"closed pattern" that is not cognizable under RICO. See 18 U.S.C. § 1961(5); see also *H.J.*

*Incorporated v. Northwestern Bell Telephone Company*, 492 U.S. 229, 236-50, 109 S. Ct.

2893 (1989); *Jennings v. Auto Meter Products, Inc.*, 495 F. 3d 466 (7th Cir. 2007); *Menzies v.*

*Seyfarth Shaw LLP*, 197 F. Supp. 3d 1076, 1098-1102 (N.D. Ill. 2016) ("closed pattern" is

insufficient.) Thus, there is no cognizable pattern of racketeering activity. Id., at 1097 n.4.

Summary judgment should be entered on Count I.


## CONCLUSION

Summary judgment should be entered for the reasons set forth above.


Respectfully Submitted,

MARTY GOLDSTEIN & PIONEER
AUTO SALES DETAILING, INC.

By One of Their Attorneys:

/s/ Daniel G. O'Day, Esq.
ARDC No.: 6181202
Cusack, Gilfillan & O'Day, LLC
Daniel G. O'Day, Esq.
Robert J. Hanauer, Esq.
415 Hamilton Blvd.
Peoria, Illinois 61602
Phone: (309)-637-5282
Fax: (309-637-5788
Email: doday@cgolawfirm.com

## CERTIFICATE OF SERVICE

I certify that on July 10, 2017, the foregoing Motion to Dismiss was filed with the Clerk of the Court using CM/ECF system, and that I have caused to be mailed by United States Postal Service a copy of the same to the following non-CM/ECF participant:

> Sean Yougblood, Pro Se
> 2201 Knollbrook Way
> Bloomington, IL 61705

Respectfully Submitted,

MARTY GOLDSTEIN & PIONEER
AUTO SALES & DETAILING, INC.

By One of Their Attorneys:

/s/ Daniel G. O'Day, Esq.
ARDC No.: 6181202
Cusack, Gilfillan & O'Day, LLC
Daniel G. O'Day, Esq.
Robert J. Hanauer, Esq.
415 Hamilton Blvd.
Peoria, Illinois 61602
Phone: (309)-637-5282
Fax: (309)-637-5788
Email: doday@cgolawfirm.com